**FILED**

SEP -4 2025

AT 8:30                              M
CLERK, U.S. DISTRICT COURT - DNJ

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Honorable J. Brendan Day |
| v. | Mag. No. 25-5038 (JBD) |
| PAUL FLANIGAN | **CRIMINAL COMPLAINT** |

I, Christopher Martinelli, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

*/s/ Christopher Martinelli*

Christopher Martinelli, Special Agent
Federal Bureau of Investigation

Attested to by telephone pursuant to
Fed. R. Crim. P. 4.1(b)(2)(A)
on September 4, 2025,
in the District of New Jersey

Honorable J. Brendan Day
United States Magistrate Judge
Name and Title of Judicial Officer           Signature of Judicial Officer

## ATTACHMENT A

On or about March 15, 2024, in Monmouth County, in the District of New Jersey, and elsewhere, the defendant,

PAUL FLANIGAN,

knowingly conducted and attempted to conduct financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity, namely, bank fraud, in violation of Title 18, United States Code, Section 1344, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## ATTACHMENT B

I, Christopher Martinelli, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents and other items of evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1.      On or about March 14, 2024, defendant PAUL FLANIGAN ("FLANIGAN") entered a bank located in Colonie, New York ("Financial Institution-1") and approached an employee of Financial Institution-1 (the "Teller") at the teller station.  FLANIGAN falsely identified himself as an account holder ("Victim-1") and provided the Teller with a fraudulent New York driver's license in Victim-1's name but bearing FLANIGAN's photograph.  FLANIGAN told the Teller that he wanted to withdraw approximately $192,000 from Victim-1's account in the form of four separate $30,000 cashier's checks made payable to Victim-1 and two separate $36,000 cashier's checks made payable to another individual.  Based on FLANIGAN's misrepresentations and fraudulent driver's license, the Teller issued the six cashier's checks that FLANIGAN requested.  FLANIGAN then exited the bank with the six separate cashier's checks and departed the area.

2.      The following day, on or about March 15, 2024, FLANIGAN entered a check cashing business located in Neptune City, New Jersey.  FLANIGAN approached an employee of the check cashing business ("Employee-1") and presented the four $30,000 cashier's checks that were issued by Financial Institution-1 on or about March 14, 2024 and made payable to Victim-1. FLANIGAN also presented Employee-1 with the fraudulent New York driver's license in Victim-1's name bearing Flanigan's photograph.  After verifying the authenticity of the checks with Financial Institution-1, Employee-1 advised FLANIGAN that FLANIGAN would only be able to cash two of the four cashier's checks, and that FLANIGAN would have to return to cash the remaining cashier's checks after the first two checks were cleared.  FLANIGAN agreed and Employee-1 proceeded to cash two of the $30,000 cashier's checks for FLANIGAN.  FLANIGAN then exited the check cashing business with approximately $60,000 in cash and departed the area.

3.      Thereafter, Victim-1 discovered that approximately $192,000 had been fraudulently withdrawn from Victim-1's bank account at Financial Institution-1 on or about March 14, 2024, and reported the fraud to local law enforcement in Colonie, New York ("Colonie Police").  Financial Institution-1 also provided Colonie Police with video surveillance footage of the fraudulent

withdrawals. Colonie Police sent screenshots of FLANIGAN from the video surveillance footage inside Financial Institution-1 to the New York State Intelligence Center for facial recognition analysis, which returned a possible match to FLANIGAN along with FLANIGAN's pedigree information and a photograph of FLANIGAN. Colonie Police provided this information to local law enforcement in Neptune City, New Jersey ("Neptune City Police"), where two of the $30,000 cashier's checks were cashed at the check cashing business on or about March 15, 2024.

4.      Neptune City Police responded to the check cashing business in Neptune City, New Jersey and obtained video surveillance footage from the business depicting the individual cashing the two $30,000 cashier's checks on or about March 15, 2024. Based on the information provided by Colonie Police, Neptune City Police conducted a search for FLANIGAN in a law enforcement database, which returned another photograph of FLANIGAN. The photograph of FLANIGAN matched images of the individual captured by the video surveillance footage inside the check cashing business in Neptune City, New Jersey on or about March 15, 2024.

5.      Thereafter, Neptune City Police created a photo array comprised of five filler photographs and a photograph of FLANIGAN. On or about April 1, 2024, the photo array was shown to Employee-1, who identified FLANIGAN's photograph as the individual who cashed the two $30,000 cashier's checks at the check cashing business in Neptune City, New Jersey on or about March 15, 2024.

6.      On or about April 1, 2024, local law enforcement charged FLANIGAN with several New Jersey state criminal offenses in connection with FLANIGAN's fraudulent cashing of the two $30,000 cashier's checks at the check cashing business in Neptune City, New Jersey on or about March 15, 2024, and obtained a warrant for FLANIGAN's arrest.

7.      On or about April 23, 2025, law enforcement located and arrested FLANIGAN in New Jersey pursuant to the state court warrant. During a post-arrest video-recorded interview, FLANIGAN waived his *Miranda* rights and admitted that he entered Financial Institution-1 on or about March 14, 2024, presented the Teller with a fraudulent driver's license in Victim-1's name but bearing FLANIGAN's photograph, and withdrew a large sum of money from Victim-1's bank account in the form of cashier's checks. FLANIGAN also admitted that he entered the check cashing business in Neptune City, New Jersey on or about March 15, 2024, presented Employee-1 with the fraudulent driver's license in Victim-1's name but bearing FLANIGAN's photograph, and cashed two of the $30,000 cashier's checks that he had fraudulently obtained from Financial Institution-1.